UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTHA ESPARZA,                     )     NO. CV 08-7605-CT
                                    )
          Plaintiff,                )     OPINION AND ORDER
                                    )
          v.                        )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security,                           )
                                    )
          Defendant.                )
_____     )

     For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.

                        SUMMARY OF PROCEEDINGS

     On November 20, 2008, Martha Esparza ("plaintiff"), filed a
complaint seeking judicial review of the denial of benefits by the
Commissioner pursuant to the Social Security Act ("the Act").  On March
11, 2009, plaintiff filed an opening brief.  On April 10, 2009, the
Commissioner filed a defendant's brief.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On February 24, 2006, plaintiff filed an application for disability insurance benefits, alleging disability since December 22, 2004, due to arthritis, a fractured right hand, and deterioration of her right hand bone and wrist.  (TR 85-105.)[1]  The application was denied initially and upon reconsideration.  (TR 59-63.)

On February 6, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (TR 70.)  On February 20, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ.  (TR 33-53.)  The ALJ also considered vocational expert ("VE") testimony.  (TR 17-24.)  On April 10, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because, while plaintiff's right hand and wrist limitations likely barred her from performing the data entry jobs she had done in the past, she was capable of performing other jobs that exist in significant numbers in the national economy.  (TR 17-24.)

On April 15, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.  (TR 13.)  On August 13, 2008, the request was denied.  (TR 5-7.)  Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and

---

[1]     "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

order and materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff essentially contends that the ALJ did not provide legally sufficient reasons to decline to credit:

1.   The residual functional capacity ("RFC") assessment of her treating physician; and,

2.   Her subjective statements regarding the extent of her pain and functional limitations.

STANDARD OF REVIEW

Under 42 U.S.C. § 405 (g) (2006), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405 (g).

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful

3

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 404.1520; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

//

//

1    2.   Issues

2        A.   Treating Physician (Issue # 1)

3    Plaintiff asserts the ALJ failed to give proper weight to the RFC

4    assessment provided by her treating physician, Paul Sussman, M.D.

5    Although a treating physician's opinion generally is entitled to

6    great weight, it "is not necessarily conclusive as to either the

7    physical condition or the ultimate issue of disability."   Thomas v.

8    Barnhart, 278 F.2d 947, 957-58 (9th Cir. 2002) (citation omitted).   It

9    is the province of the ALJ to determine credibility and evaluate

10   conflicting medical evidence.   Id.   The weight the ALJ affords to any

11   physician's opinion turns on the evaluation of a number of factors,

12   including not only the length and nature of the treating relationship,

13   but also the consistency of the opinion with other evidence in the

14   record and whether the physician has "present[ed] relevant evidence to

15   support an opinion, particularly medical signs and laboratory findings."

16   20 C.F.R. § 404.1527 (d).

17   The ALJ may, accordingly, determine that a treating physician's

18   opinion is entitled to little or no weight, but in doing so she must

19   make a record of the "specific and legitimate reasons" that support her

20   evaluation by "setting out a detailed and thorough summary of the facts

21   and conflicting clinical evidence, stating [her] interpretations

22   thereof, and making findings."   Thomas, 278 F.3d at 957.

23   "Specific and legitimate reasons" for giving little or no weight to

24   a treating physician's opinion may include that the opinion is

25   conclusory and unsupported by objective medical findings, Batson v.

26   Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004),

27   conflicts with the physician's own treatment notes, Connett v. Barnhart,

28                                     5

340 F.3d 871, 875 (9th Cir. 2003), conflicts with the independent opinion of a consulting examiner, Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985), or conflicts with a non-examining physician's opinion that is itself supported by other record evidence, Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, after a detailed discussion of the record, the ALJ ultimately rejected Dr. Sussman's restrictive RFC assessment in favor of that opined by consultative examining physician Nicholas N. Lin, M.D.[2] (TR 22.) She concluded Dr. Sussman's RFC was entitled to little or no weight for the following specific and legitimate reasons.

First, the ALJ noted that Dr. Sussman's opinion is not facially well-supported, and it conflicts with his treatment notes. His RFC questionnaire notes that the only clinical finding supporting his restrictive RFC was "intermittent joint swelling." (TR 21, 263.) As the ALJ noted, while this general finding seems directly supported by Dr. Sussman's treatment notes, "with the caveat that even the reported swelling is essentially limited to the upper right extremity" (TR 21,

---

[2] According to Dr. Sussman, plaintiff has the following limitations: pain interferes with attention and concentration occasionally; sit only 45 minutes at a time; stand only 30 minutes at a time; sit for no more than 2 hours per day; stand for no more than 2 hours per day; must walk every 60 minutes for 5 minutes at a time; will require four unscheduled breaks daily; will be absent at least two days per month; can lift less than 10 pounds rarely, never any more; can only occasionally look down, turn head, look up, hold head static; can never crouch or squat; can rarely stoop or climb; can grasp, turn, twist, fine manipulate, reach with both sides for only 10% of each day. (TR 263-67.)
In contrast, Dr. Lin opined that plaintiff can: lift or carry 20 pounds occasionally and 10 pounds frequently; sixt, stand, or walk for 6 hours; can frequently reach and manipulate with her left upper extremity but only occasionally with her right. (TR 213.)

145-214, 226-57, 262-76), it does not support such a restrictive RFC assessment.   The lack of clinical support for a restrictive RFC assessment alone provides substantial evidence in support of the ALJ's evaluation.   See 20 C.F.R. § 404.1527 (d).

Indeed, the ALJ noted multiple inconsistencies between Dr. Sussman's RFC assessment and his treatment records.   Dr. Sussman's opined, for example, that plaintiff is limited in her ability to move her head and neck, but his treatment notes do not indicate he ever treated plaintiff for head or neck pain.   (See TR 22, 266, 145-214, 226-57, 262-76.)   His treatment notes contain no more than one or two references to depression, and plaintiff was not under the care of a mental health specialist, yet "Dr. Sussman lists [depression] (and anxiety, that is also essentially absent in the underlying records) on [his] assessment form."   (TR 18, 264.)   The administrative record includes no treatment records from November 2006 to December 2007,[3] and yet Dr. Sussman offered his narrow RFC assessment in January 2008.   (TR 21, 267.)   In fact, Dr. Sussman's sole treatment record from December 2007 concluded plaintiff's prognosis was "good," her arthritis was "stable" and that she was in "less pain."   (TR 271.) The ALJ found Dr. Sussman's limitation on sitting and standing, the assertion that she would need to shift positions at will, and the asserted need for unscheduled breaks similarly did not find support in the "general statements" his underlying treatment records.   (TR 22, 145-214, 226-57, 262-76.)   The failure of the treatment notes to provide a basis for the

_____

[3] Indeed, the ALJ held open the record for ten days after the hearing so that plaintiff could provide her with any treatment records from that time period.   (TR 21.)

1  functional restrictions opined is a specific and legitimate reason to
2  discredit that opinion.  <u>Connett</u>, 340 F.3d at 875.

3     Second, Dr. Sussman's RFC assessment was not consistent with
4  plaintiff's self-assessed limitations.  Dr. Sussman opines, for example,
5  that plaintiff can sit for only 45-minute intervals and stand for 30-
6  minute intervals, which is far less than the 2-hour intervals plaintiff
7  testified she can sit and stand.  (TR 21, 264-65, 39-40.)

8     Third, the ALJ noted that Dr. Sussman's RFC is in marked conflict
9  with the "specific" RFC and independent clinical tests performed by Dr.
10 Lin.  (TR 21.)   The ALJ found Dr. Lin's RFC assessment was wholly
11 consistent with the record, unlike Dr. Sussman's.  (<u>Id.</u>)  For example,
12 Dr. Lin found, based upon his tests of plaintiff's grip strength, tests
13 that Dr. Sussman did not either perform or consider, that plaintiff had
14 normal motor and grip strength in her left upper extremity and was
15 limited only on her right side.  (TR 212.)  This, the ALJ concluded, is
16 consistent with plaintiff's complaints (TR 85-105), Dr. Lin's findings
17 (TR 209-013), Dr. Sussman's treatment records (TR 145-214, 226-57, 262-
18 76), but is inconsistent with Dr. Sussman's RFC assessment that
19 plaintiff can use her left upper extremity for only 10% of the day.  (TR
20 22, 266.)  The conclusions of Dr. Lin based upon his own examination and
21 observations are, on their own, substantial evidence to reject Dr.
22 Sussman's opinion.  <u>See</u> <u>Magellenes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.
23 1989); <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (independent
24 clinical findings that comprise substantial evidence may be those based
25 upon medical tests the treating physician himself did not consider).

26    Finally, Dr. Sussman's opinion was inconsistent with the
27 conclusions of two state agency physicians based on their reviews of

28                                    8

1 plaintiff's treatment records.[4]  (See TR 216-22, 258-59.)  When combined
2 with other substantial evidence that contradicts the RFC of a treating
3 physician, non-examining physician statements can provide support for
4 the ALJ's decision to give that opinion little or no weight.   See
5 Connett, 340 at 875.

6      Accordingly, the ALJ's evaluation of the treating physician's
7 opinion is based on substantial evidence and free from material legal
8 error.

9           B.    Plaintiff's Credibility (Issue # 2)

10      Plaintiff contends that the ALJ failed to consider her subjective
11 statements regarding the extent of her pain.

12      Absent affirmative evidence of malingering, if a plaintiff has
13 produced evidence of an impairment that reasonably could give rise to
14 the symptoms alleged, the Commissioner may reject plaintiff's subjective
15 testimony regarding the extent of those symptoms only for clear and
16 convincing reasons.  Lester v. Chater, 81 F.3d at 834.   If the ALJ
17 rejects the plaintiff's allegations as not credible, he or she "must
18 specifically make findings which support this conclusion."  Bunnell v.
19 Sullivan, 947 F.2d at 345.

20      An ALJ may, however, use ordinary techniques of credibility
21 evaluation in weighing a plaintiff's subjective complaints and thus may

---

24      [4]  Reviewing physician M. Sohn found plaintiff can:
occasionally lift and carry 20 pounds; frequently lift or carry
25 10 pounds; stand, walk, and sit for 6 hours; only occasionally
push or pull with right hand; can only occasionally handle and
26 finger with her right hand; can frequently climb, balance, stoop,
kneel, crouch, and crawl.  (TR 216-21.)  Similarly, reviewing
27 physician P.A. Talcherkar, M.D., concluded the medical record
supported the ALJ's RFC. (TR 259.)

1  consider such evidence as prior inconsistent statements, testimony that

2  appears less than candid, unexplained or inadequately explained failure

3  to seek treatment or to follow a prescribed course of treatment, and

4  plaintiff's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1272, 1281 (9th

5  Cir. 1996). If the ALJ finds specific reasons suggesting plaintiff's

6  testimony is generally not credible, plaintiff's symptom testimony may

7  likewise be rejected. <u>Thomas v. Barnhart</u>, 278 F.3d 957, 960 (9th Cir.

8  2002)(citation omitted). When the "ALJ's credibility finding is

9  supported by substantial evidence in the record, [the court] may not

10 engage in second guessing." <u>Id.</u> at 958.

11      Citing the record and plaintiff's testimony, the ALJ found

12 plaintiff was not credible for the following specific and legitimate

13 reasons.

14      First, Dr. Sussman concluded in December 2007 that plaintiff's

15 prognosis was "good" and that she was in "less pain" (TR 271), which the

16 ALJ found "undermine[s] [plaintiff's] testimony of worsening

17 symptomatology." (TR 22.) Similarly, plaintiff's allegations of

18 worsening limitations is undermined by the fact that she provided only

19 one treatment record from 2007, despite the ALJ's offer to hold open the

20 decision for ten days after the hearing so plaintiff could augment her

21 records. (TR 21.)

22      Second, the ALJ found plaintiff's testimony regarding her pain was

23 inconsistent with her statements to her physicians. (TR 19-20.)

24 Plaintiff testified that at least several days a week her pain is a 10

25 on a scale of 1-10 - i.e., she said, worse than childbirth pain. (TR

26 43-44.) She testified the pain awakens her about three times every

27 night and requires her to lie down for about half of every day. (<u>Id.</u>)

28

10

1 The ALJ noted that plaintiff nonetheless limited herself to several
2 Advil in response and did not, according to her treating records, seek
3 any treatment at all between November 2006 and December 2007, which
4 response does not, the ALJ concluded, "suggest complaints of pain akin
5 to a 10/10." (TR 20.)
6    Plaintiff contends the ALJ cannot discredit her testimony about the
7 level of pain she suffers on this basis because, she contends, she was
8 removed from more significant pain medication at the suggestion of her
9 doctor. This is not supported by her treating physician's reports. Dr.
10 Sussman's most recent treatment record, from December 2007, states that
11 plaintiff informed her doctor she was in "less pain" since she was
12 removed from her other medications. (TR 271.) Dr. Sussman did not
13 report that plaintiff was in debilitating pain or suggest that she
14 required a more aggressive means to ameliorate her pain. (Id.) Indeed,
15 the report indicates Dr. Sussman merely instructed plaintiff to continue
16 to take Advil as needed. (Id.)
17    Third, the ALJ found plaintiff not to be credible overall because
18 her testimony regarding daily activities was inconsistent with those she
19 described in her function reports. (TR 19.) For example, plaintiff
20 testified that she can only do one load of laundry before she becomes
21 exhausted, that she gets her daughter dressed for and drives her to
22 school, walks her to the school gate, and stays in bed up to half of
23 almost every day. (TR 43-44.) In her function report, however, she
24 stated that she bathes and grooms herself; makes breakfast and lunch for
25 herself and daughter daily; washes dishes; vacuums the house; bathes,
26 dresses, and reads to her young daughter; reads the newspaper; pays
27 bills; does light laundry. (TR 112-18.) She further explained in her

11

1  function report that she can feed herself and that "sometimes" she drops
2  things when using her right hand.   (TR 112-113.)   The ALJ found that,
3  not only do the treatment records fail to indicate dropping things was
4  a problem plaintiff reported to her physicians, but also that such
5  statements indicate plaintiff attempts and performs a broader range of
6  activities on a regular basis than she has testified to.   (TR 20.)

7      Plaintiff contends the ALJ erred in relying on her function report
8  because even those activities, she argues, do not indicate she can
9  perform substantial gainful activity.   Whether the function report alone
10 could establish non-disability if this case turned on that question is
11 not the issue, however.   The court finds that the function reports do
12 provide substantial evidence to support the ALJ's conclusion that
13 plaintiff's subjective testimony is not credible.

14     Finally, the ALJ found that plaintiff's complaints do not comport
15 with the medical record.   (TR 19-20.)   As an example, plaintiff
16 complains that she has problems related to the lumbar spine, hips, and
17 shoulders, yet the medical records do not indicate objective findings
18 supporting any such problems, and, in fact, indicate only "sporadic"
19 complaints of swelling in any joints other than plaintiff's right wrist.
20 (TR 19-20, 145-214, 226-57, 262-76.)   As another example, plaintiff
21 states that she must use a cane for ambulation, but the ALJ noted that
22 no medical evidence shows she has sought or been prescribed an assistive
23 device.   (TR 21, 145-214, 226-57, 262-76.)   References to impairments
24 made only to the social security administration are not alone evidence
25 that those impairments are sufficiently severe to affect a plaintiff's
26 ability to work.   See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.
27 1985)( ALJ properly rejected allegation of impairment from side effects

28

1  of narcotic medication because plaintiff provided no clinical evidence
2  showing that narcotic use impaired her ability to work).

3      Accordingly, the ALJ's credibility finding is based on substantial
4  evidence and free from material legal error.

5  CONCLUSION

6      If the evidence can reasonably support either affirming or
7  reversing the Commissioner's conclusion, the court may not substitute
8  its judgment for that of the Commissioner.  <u>Flaten v. Sec'y of Health</u>
9  <u>and Human Servs.</u>, 44 F.3d at 1457.

10      After careful consideration of the record as a whole, the
11  magistrate judge concludes that the Commissioner's decision is supported
12  by substantial evidence and is free from material legal error.
13  Accordingly, it is ordered that judgment be entered in favor of the
14  Commissioner.

15

16  DATED: *April 20, 2009*

17  _____
18  CAROLYN TURCHIN
    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28                        13

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Martha Esparza | |
| (Claimant) | |
| | ████████ |
| (Wage Earner) | (Social Security Number) |

This case is before the Administrative Law Judge (ALJ) on a Request for Hearing filed by the claimant, who is dissatisfied with the prior determination finding her not disabled based on her February 2006 application for Disability Insurance Benefits. The claimant testified at a hearing held on February 20, 2008, in West Los Angeles, California, and was represented by Todd Greenwald, Attorney at Law (Law Offices of Fred Fleming). Ron Hatakeyama, Ph. D., testified as a vocational expert. Decision was deferred pending submission of additional medical documents.

The general issue is whether the claimant is entitled to a period of disability, Disability Insurance Benefits under Sections 216(i), 223, respectively, of the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

<u>EVALUATION OF THE EVIDENCE</u>

The claimant is a 34-year old woman who completed one year of college education and has past relevant work as a data entry person and medical records clerk. The claimant alleges a "disability" onset date of December 22, 2004, based on rheumatoid arthritis. She met the disability insured status requirements on her alleged onset date and continues to meet them through the date of this decision.

In analyzing this claim under the sequential evaluation process (20 CFR 404.1520), the ALJ must first determine whether the claimant has engaged in substantial gainful activity since December 22, 2004 that defeats her claim in full or precludes a potential finding of "disability" through a date certain. The claimant's SSA record reflects fairly significant earnings for years after onset. The claimant explained, however, that she is on long-term disability through her employer, receiving in excess of $1,000 a month. This appears to account for the bulk entries on her record. However, although initially testifying that she last worked in December 2004, the claimant later acknowledged that she subsequently returned to work as medical records clerk, a job that she had been doing for a period through her alleged onset date. Such post alleged onset

17



Martha Esparza (██████████)                                    Page 2 of 2

employment is clearly referenced in the medical records (Ex. 1F). Giving the claimant the benefit of the doubt, the ALJ considers this an unsuccessful work attempt. Thus, the case outcome is not based on work activity after onset.

In continuing with the sequential evaluation process, the ALJ finds that the claimant has a "severe" impairment, which only denotes that she is more than minimally affected in the performance of basic work activity or activities. The ALJ finds that rheumatoid arthritis is the only "severe" impairment. As discussed herein, the claimant asserts multiple areas of musculoskeletal involvement, but these all appear to link to rheumatoid arthritis. Diagnostic studies in the musculoskeletal realm are generally unimpressive, save for in the dominant upper extremity. The record indicates no more than one or two passing references to depression, yet treating physician Dr. Sussman lists it (and anxiety, that is also essentially absent in the underlying records) on an assessment form. The claimant has not been under the care of a mental health specialist. She did not allege a mental impairment in filing her claim, and made only passing reference to same at the hearing, as a residual of her reduced physical capacities. The evidence reflects that the claimant has had stressors, including dealing with her physical condition, her young daughter and with the illness of her ex-spouse, but it does not show signs or speak to more than sporadic symptoms due to life circumstances. The ALJ does not find a medically determinable mental impairment.

The ALJ must next determine whether the claimant has an impairment or a combination of impairments that meets or equals in severity any impairment listed at Appendix 1 to Subpart P of Regulations no. 4. She finds that the claimant does not have such impairment or impairments, specifically rejecting counsel's argument that the claimant satisfies listing 14.09D for rheumatoid arthritis. As will become clear later in this decision, it is appropriate to conclude that the claimant has inflammatory arthritis, with signs of joint inflammation; but this is insufficient to satisfy the listing. The evidence does not establish the requisite additional criterion. First, fatigue and malaise appear to be the only significant, documented constitutional symptoms, but they are only intermittent, and most clearly, there is a lack of more than sporadic signs; e.g., fever, weight loss. Further, even if this aspect of the listing is satisfied, the evidence does not show involvement of two or more organs/body systems, at least one of moderate severity.

In continuing with the sequential evaluation, the ALJ must determine whether the claimant can perform her past relevant work and, if not, whether she can perform other work that is consistent with her medical limitations and vocational factors. To do so, the ALJ must first asses the claimant's residual functional capacity-i.e., her ability to work on a regular and continuing basis despite her impairments.

The ALJ makes a primary finding that the claimant has the exertional capacity for lifting and carrying up to 20 pounds occasionally and 10 frequently, sitting for 6 hours in an 8-hour workday and standing and/or walking for 6 hours in an 8-hour workday. This comports with light work (20 CFR 404.1567). Additionally, while the claimant can frequently engage in fine and gross manipulations and reach in all directions with her left, non-dominant upper extremity, she can only do so occasionally with her right, dominant upper extremity. The ALJ makes an alterative finding that the claimant is additionally limited to sitting and standing for a maximum



Martha Esparza (  )                                                    Page 3 of 3

of 2 hour increments each. As will be seen by the vocational discussion herein, inclusion of the "additional' limitations would not alter the ALJ's ultimate decision.

In formulating the residual functional capacity assessments above, the ALJ has considered the combination of all medically determinable impairments whether or not "severe." She has evaluated the claimant's allegations of pain, fatigue and other symptoms under the guidance of 20 CFR 404.1529 and Social Security Ruling 96-7p. While the rheumatoid arthritis is an established impairment that can reasonably cause the basic symptoms alleged; the cumulative evidence, including factors other than objective findings alone, fails to that the persistence and intensity of the claimant's symptoms are of a disabling degree.

The claimant testified that she stopped working in December 2004 when her arm went out lifting a lot of medicals records and rheumatoid arthritis was found. While the ALJ appreciates claimant's testimony that she failed in her attempt(s) to return to his job; she must emphasize that, as Dr. Hatakeyama confirmed; this job, as well that of data entry person, required frequent bilateral reaching, handling and fingering. It is also noteworthy that the medical entries suggest that the claimant's condition exacerbated after these attempts (e.g., Ex. 1F/47).This history does not suggest or establish that the claimant would be unable to perform jobs that do not require the same level of bilateral usage of the upper extremities.

The claimant testified that she has stiffness, swelling and pain in the hands, shoulders, wrists and knees; classifying the (dominant) right upper extremity and left knee as most problematic.  She testified that her physician, Dr. Sussman, has stopped her potent medications due to numbness/tingling (face, knees) and concerns with the liver. She testified to currently taking 4-8 Advil a day.  The claimant's testimony that at least ½ of the time, her pain is at a 10 on a 1-10 progressive scale and worse than her pain during childbirth does not comport with the contemporaneous data. Moreover, the ALJ finds it suspect that one would limit herself to Advil with that degree and frequency of severe pain.   Similarly, he finds suspect the claimant's testimony that she spends about ½ the day in bed or reclining and that her pain awakens her about three times a night.

The claimant testified that she does little during the day, where she resides with her parents and her 5-year old daughter.  However, she acknowledged readying her daughter for school, driving her to school and walking her 10-15 minutes to the school gate. The claimant testified that she does a few household chores; but contended that she is exhausted afterwards. Her responses on SSA forms made in connection with her application suggest somewhat greater activities, including driving for groceries and doing a few more chores, such as vacuuming with the minor upper extremity (Ex. 4E). Her statements that that she leaves the house three times a week (id.) seems to counter her report of taking her daughter to school. Further, the claimant's testimony that she avoids repetitive functions with the upper extremities suggests that she does some activities with them. In accord, medical entries speak to persistent activity induced discomfort in the hands and shoulders (Ex. 1F/ 44). The claimant indicates that she uses a brace or splint, but denies that any device has been prescribed (Ex. 4D). The claimant's testimony suggested that dropping times is a common occurrence, but this is not reflected in the treating records.  In a subsequently completed form, the claimant indicated additional  problems related to the lumbar spine, hips and shoulders (Ex. 9E), but the medical records are unimpressive for associated



19

Martha Esparza █████████                                                Page 4 of 4

objective findings or even for consistent subjective concerns. To some extent, the claimant's activities, and, to a greater extent, her contemporaneous statements in record, undermine her testimony that she has only has 3-4 "good" days a month.

The claimant, emphasizing the left knee, contended that she has problems with standing /walking and sitting. However, she did estimate that she could sit for 2 hour increments-but not for 6 hours a day, and could stand for 1½ hour increments. The claimant stated that she used a cane at times, but there is no indication that she been prescribed an assistive device for ambulation.

The treating records (Facey Medical Foundation, primarily from or through Dr. Sussman) generally relate the primary complaints of stiffness and swelling in the right hand with some decreased range of motion (see generally Exs. 1F, 5F). However, there are also entries of good hand function and no swelling. As noted above, the entries suggest exacerbation with persistent usage or work attempts that required frequent bilateral upper extremity usage. Historically, x-rays showed mild degenerative change in the right hand and wrist (Ex. 1F/18), although recent studies showed some areas of severe degenerative changes in the right hand and mild changes in the left (Ex. 9F); but the latter is rarely seen as symptomatic. Moreover, the latest treating note entry is in late 2006 (Ex. 5F). In sum, this evidence does not suggest complaints of pain akin to a 10/10. It appears consistent with the ALJ's assessment. However, given that Dr. Hatakeyama testified to jobs that would not even require usage of one hand (see discussion, infra), even a greater degree of work restriction would not alter the case outcome.

As we will recall, the claimant testified that the left knee is the other primary area of concern. While recent study showed degenerative changes in the knees, left worse than right (Ex. 9F); the treating records essentially do not reflect this as an area of complaint. Moreover, the entries consistently reflect that the claimant has no swelling in the knees (or ankles) (Exs. 1F, 5F). In accord, the entries are essentially absent for complaints of problems with standing, walking or sitting (id.).

The treatment documents reflect only sporadic complaints of involvement of other joints. They also show some complaints of back pain and other musculoskeletal concerns, but reflect unremarkable associated diagnostic studies (Exs. 1F, 5F).

The treating entries generally reflect that the claimant has had some positive responses to medications, which have included Methoraxate, Plaquenil and Enbrel, with tolerable side effects. More recently, we find that hair loss was associated with one medication. However, while a few entries describe rheumatoid arthritis as not adequately controlled and the tailoring of the medications remains necessary; it appears that the claimant has generally responded without untoward side effects. The records speak to fatigue at times as a problem, sometimes describing it as variable. They do not suggest it as a problem that is so persistent or severe to require the claimant to recline ½ of the day. Clearly, the limitations assessed by the ALJ, at least insofar as the alternate residual functional capacity, would minimize the energies needed for work.

Moreover, the latest entries submitted, from late 2006, indicate that the claimant was getting better and doing well and assess the rheumatoid arthritis as adequately controlled (Ex. 5F/2-3).

20



Martha Esparza (███████)                                                    Page 5 of 5

The ALJ specifically held the record open for 10 days for additional records from Dr. Sussman, but only the 2008 studies were submitted. Given the latest entries and the lack of contemporaneous confirmation of anything to the contrary, it appears to the ALJ that the claimant's symptoms are relatively well controlled.

The ALJ recognizes that the claimant is on long-term disability through her employer. This factor is not binding in the ALJ, whose concern is whether the claimant is, under Social Security law, precluded from all work (20 CFR 404. 1504). It should be noted, however, that, as consistent with such employer classification, the treating records (Exs. 1F, 5F) reflect the claimant's concerns with securing physician statement(s) about the effect that her limitations would have on her usual work.

The ALJ appreciates that Dr. Sussman is a treating physician. She will specifically discuss his capacity assessment form later herein. Suffice it to state here that the only consistent objective abnormalities reported relate to the dominant upper extremity. In April 2006 consultative internal medicine report (Ex. 2F), Dr. Lin described the claimant as appearing in no acute physical distress. The major abnormal findings were in the right upper extremity, with reduction in grip strength (20 pounds) and range of motion. Dr. Lim, however, reported normal range of motion in the left hand (and 70 pound grip strength) as well as in both shoulders and elbows. He reported normal neurological findings, including motor strength in all extremities. As consistent with the treating records, he related normal range of motion in the knees and ankles and no associated abnormality. Dr. Lin further reported that the claimant was able to stand on heels and toes, perform tandem gait, change position, and get on and off the examining table without difficulty. He posited that the no assistive device was required for ambulation across the room.

Dr. Lin assessed that the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit similarly. He offered that there are no postural, environmental, visual or communicative limitations. Dr. Lin assessed that the claimant can do fine and gross manipulation and reach in all directions frequently with the left hand, but only occasionally with the right hand. (Ex. 2F).

The ALJ largely rejects Dr. Sussman's January 2008 responds on a questionnaire form in terms of work capacity (Ex. 8F). The ALJ stresses that while Dr. Sussman lists the claimant as having multiple area of pain, as well as symptoms of joint pain and swelling and fatigue, he identifies; "intermittent joint swelling" as the only clinical finding/objective sign. Save for some related showing of decreased range of motion in the right upper extremity; that comment essentially comports with his underlying treatment notes, with the caveat that even the reported swelling is essentially limited to the right upper extremity. Dr. Sussman posits that the claimant's pain or other symptoms occasionally are severe enough to interfere with the attention and concentration needed to perform even simple tasks-which describes the midpoint between "never" and "constantly". He opines that the claimant is capable of low stress jobs but-save for his unsupported marking of depression and anxiety as causes, does offer reason to minimize stress. Dr. Sussman's estimates that the claimant can sit for 45 minute intervals and stand for 30 minute intervals are far less than the claimant acknowledges. Moreover, his limitation to sitting 2 of 8 hours total and standing/walking for 2 of 8 hours does not flow from the underlying treatment records and seems not to follow from the amount of time that he allows for



maintaining one position at one time.  Moreover, even on this form, Dr. Sussman refers to the knees as the only area of non-upper extremity involvement, and we have seen that the claimant consistently tests without deficit in the knees   Similarly, the underling treating records do not support Dr. Sussman's assertion that the claimant would need a job that allowed her to shift positions at will (but see discussion, infra). His assessed limitation that the claimant can only use the bilateral upper extremities 10% of the time is not supported by the record, including the specific grip strength reading by Dr. Lin (as opposed to general statements by Dr. Sussman in progress notes).  Moreover, the reliability of Dr. Sussman's responses is somewhat undermined by his assessing the same degree of limitations on each extremity whereas; his records and the claimant's testimony make clear that the right upper extremity is more severely affected. His estimate that lifting/carrying is limited to less than 10 pounds-and then only rarely, does not comport with the evidence (but see discussion, infra).  The evidence does not support his assessment in terms of movement of the head/neck or postural maneuvers that, among other things, are not implicated in the treating records and are countered by Dr. Lin's report. Similarly, the cumulative record does not support the need for unscheduled breaks or the absence from work.  The ALJ notes that Dr. Sussman offered that prognosis was "good" (Ex. 9F). Notwithstanding his assessment form (see discussion, infra); the combination of this factor and the latest progress notes showing adequate control tend to undermine the claimant's testimony of worsening symptomatology.

The ALJ finds that Dr. Lin's assessment is well taken. She recognizes that Dr. Lin only examined the claimant one time. He did, however, review treating records. Moreover, as discussed above, his report comports with the underlying records from Dr. Sussman in showing the right upper extremity as the only area of consistent concern-but, in this regard, he adds specific findings of normal motor strength and 20/70 grip strength.  Further, as discussed above, the latest treating records suggest adequate control.  Finally, the ALJ finds some secondary support in the state agency assessments that approximate that found herein and, on reconsideration, post-dated the latest treating source entry. (Exs. 3F, 6F).

The ALJ is now ready to determine whether the claimant can perform her past relevant work. Based on Dr. Hatakeyama's testimony, the limitations assessed would rule out work as a data entry person and medical records clerk. Therefore, the burden shifts to SSA to identify jobs that the claimant can perform that are consistent with her age, education, work experience and medical limitations.

The claimant is a "younger individual" with a high school education or more. Based on Dr. Hatakeyama's input, the claimant's past relevant work was semi-skilled, but did not provide her with transferable skills to jobs that comport with the limitations assessed by the ALJ.  Given these circumstances, Rule 202.21, Table no.2, Appendix 2 to Regulations no. 4 serves as a framework for a finding of "not disabled." Although the claimant cannot perform the full range of light work, Dr. Hatakeyama's testimony establishes that jobs exist in significant numbers in the national economy that the claimant can perform.

Dr. Hatakeyama testified that examples of specific performable occupations are photocopy machine operator and collator operator, describing both as light and unskilled (SVP 2). He indicated that there are 2,500 photocopy machine operating jobs in the local economy and



Martha Esparza (████████)                                            Page 7 of 7

400,000-500,000 nationally and similar numbers for collator operator. In regard to the non-exertional limitations, he specifically noted that these jobs can be done with one hand and do not require fine manipulation. Commenting on these occupations, he offered that, notwithstanding their characterization as light, they do not require lifting as much as 20 pounds occasionally; rather no more than 2-5 pounds (a ream of paper). Dr. Hatakeyama took from the Dictionary of Occupational Titles (DOT) and his testimony is not inconsistent with it (photocopy machine operator at code 207.685-014; collator operator at code 208.685-010). His comments may expand upon the DOT to some extent (e.g., offering that the jobs be can be done with one hand), but are not inconsistent with it. In any event, to the extent that one might posit that a conflict exists, the ALJ relies on Dr. Hatakeyama's input; as he has updated knowledge and practical experience in observing work settings.

As explained above, the ALJ finds from the preponderance of the evidence that the claimant is not significantly restricted in standing or sitting. However, assuming arguendo that she is (additionally) limited to 2-hour increments of each, which the ALJ finds to represent the most liberal plausible interpretation of the evidence allowable; Dr. Hatakeyama maintained his opinion as to the viability (and associated numbers) of the occupations of photocopy machine operator and collator operator. In accord, he explained that the jobs allow the worker to alternate sitting and standing and to control when each is done. Again, such input augments, but is not inconsistent with the DOT; but, if so considered, is favored by the ALJ due to Dr. Hatakeyama's current and hand-on knowledge. Thus, the ALJ finds that the claimant can perform jobs existing in significant numbers in the national economy and is "not disabled" under the framework of rule 202.21, as critically augment by the expert vocational testimony.

Dr. Hatakeyama responded to questions from counsel that posited additional or more severe limitations and that the ALJ rejects. However, Dr. Hatakeyama stated that as the identified jobs do not require bilateral upper extremity usage; even a total preclusion on fine manipulation with the dominant upper extremity would not be consequential. The ALJ need not determine the reliability of this aspect of testimony. More importantly, she reiterates Dr. Hatakeyama's testimony that these jobs involve a maximum lifting of 5 pounds. Thus, even if the ALJ were to so restrict the claimant, she would still find her capable of performing the occupations identified.

Based on the foregoing analysis, it is the decision of the ALJ that the claimant has not been under a "disability" within the meaning of the Social Security Act, at any time through the date of this decision.

<u>**FINDINGS**</u>

**After careful consideration of the entire record, the Administrative Law Judge makes the following findings.**

1. **The claimant met the disability insured status requirements on her alleged onset date of December 22, 2004, and continues to meet them through the date of this decision.**

2. **The claimant has not engaged in chargeable substantial gainful activity since December 22, 2004.**

3. **The claimant has "severe" rheumatoid arthritis, but does not have an impairment or a combination of impairments that meets or equal in severity an impairment listed at Appendix 1 to Subpart P of Regulations no. 4.**



Martha Esparza                                           Page 8 of 8

4. **The claimant's allegations are credible only to the extent that they comport with Finding no. 5.**

5. **The claimant has the residual functional capacity** to lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour workday and stand and/or walk for 6 of 8 hours. This comports with the exertional capacity for light work (20 CFR 404.1567). Additionally, the claimant is limited to frequent gross and fine manipulation and reaching in all directions with her left (non-dominant) upper extremity and to occasional gross and fine manipulation and reaching in all directions with the right (dominant) upper extremity.

6. **The claimant's limitations preclude her from performing past relevant work.**

7. **Considering the claimant's medical/vocational/lingual profile, Rule 202.21 serves as framework for a finding of "not disabled." Although the claimant cannot perform the full range of light work; she can perform jobs existing in significant numbers in the national economy, including those identified by the vocational expert of photocopy machine operator and collator operator.**

8. **In the alternative to Finding, 5, the claimant has additional limitations that she can only sit for 2-hour increments and stand for 2-hour increments.**

9. **Based on the vocational expert testimony, the occupations of photocopy machine operator and collator are performable even with the additional limitations set forth at Finding no. 8 (as they allow for a sit/stand option within the control of the worker).**

10. **The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.**

<u>DECISION</u>

It is the decision of the Administrative Law Judge that based on the application filed on February 24, 2006, the claimant is not entitled to a period of disability or to disability insurance benefits under sections 216 (i) and 223, respectively, of the Social Security Act.

*Sally C Reason*
Sally C Reason
Administrative Law Judge
APR 1 0 2008
Date

24

